IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DE CARLOS TORO,           )
                          )
            Plaintiff,    )
                          )
      vs.                 )   No. 04 C 4484
                          )
P.O. R. GAINER #19418, et al., )
                          )
            Defendants.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff DeCarlos Toro brought this action against defendants Brian Gainer and Timothy Fitzpatrick, alleging false arrest and malicious prosecution arising from his arrest and subsequent prosecution for unlawful use of a weapon. Defendants contend that they are entitled to summary judgment because plaintiff is barred from arguing that they lacked probable cause to arrest him due to the collateral estoppel effect of the state trial court's denial of a motion to quash raised by plaintiff (who was then the defendant in state court). Defendants also raise the shield of qualified immunity and further argue that plaintiff has failed to state a claim for malicious prosecution. For the following reasons, defendants' motion is denied.

## BACKGROUND

The following factual background is based on the statements submitted by the parties pursuant to Local Rule 56, and, for purposes of the summary judgment motion, we construe the facts in plaintiff's favor. On July 30, 2002, plaintiff was with a group of individuals in the vicinity of Huron and Homan Avenues in Chicago. At some point there was an altercation and several shots were fired, causing defendants to arrive at the scene in an unmarked police

car. Defendant Gainer observed a man holding a handgun turn and run, and Officer Peter Devine, who was also in the squad car with defendants, gave chase on foot but was unable to apprehend the individual after pursuing him for several blocks through alleys, around houses, and through a vacant lot. Officer Devine did recover the handgun that the individual discarded during the chase.

On November 5, 2002, three months after the shooting, defendants were on patrol and noticed plaintiff, along with two others, standing at an intersection. Defendants proceeded to frisk plaintiff and his companions and then, without a warrant, arrested plaintiff, handcuffed him, and transported him to the police station. Plaintiff contends that defendants stated he was arrested for disorderly conduct, and it was not until he was at the station that they identified him as the shooter from the July 30, 2002, incident, and charged him with the unlawful use of a weapon. After hearing these accusations, plaintiff asserts that he told defendants that due to a severe leg disability that existed prior to July 2002, he could not run, and that they had arrested the wrong person.

Plaintiff moved to quash his arrest and on May 29, 2003, the circuit court held a hearing and ruled on that motion. At the hearing, plaintiff's defense counsel argued that it was impossible for plaintiff to run because of his disability. Two witnesses who were at the scene of the shooting, Milton Bailey, who worked at a grocery store near Huron and Homan, and Dewayne Baker, a childhood friend of plaintiff, testified that plaintiff wore a leg brace and used a cane on July 30, 2002, and could not have run. In plaintiff's defense, Baker also stated that plaintiff could not be the shooter because when the shots rang out he grabbed plaintiff. Bailey and Baker had prior felony convictions, which the prosecution used to impeach their testimony. Defense counsel also called Officer Devine and defendant Gainer to the stand.

Each identified plaintiff as the shooter who ran down the alley, and both denied that plaintiff wore a brace or used a cane. The trial court concluded that probable cause existed, finding that "the credibility contest is won by the officers."

Plaintiff's trial was held on July 15, 2003, before the same trial court, and the prosecution's case-in-chief consisted of a stipulation to the record of the pretrial hearing. Defense counsel presented a new witness, Dr. Angeles Valdes, a podiatrist who had treated plaintiff and knew the extent of his disability. Dr. Valdes stated that plaintiff had severed his peroneal nerve, which controls muscle movement and sensation in the leg, ankle, and foot. She described how the bones in his ankle were fused so that he could step down and also how she removed parts of his heel and other tissue due to a serious infection. Dr. Valdes characterized plaintiff's disability as a "permanent deformity," and also that it was a degenerative condition. After an in-court examination of plaintiff's foot, Dr. Valdes testified that the condition had actually worsened since the last time she treated plaintiff, which was February 2001, and that there was no way plaintiff's condition could have improved since that date. Ultimately, she stated, in no uncertain terms, that plaintiff could not run in July 2002. Based on this testimony the court acquitted plaintiff, describing the case as a "mistaken identity situation," and that "it could not have been [plaintiff]" running from the police.

Defendants argue that under the doctrine of collateral estoppel, the trial court's pretrial finding that probable cause existed precludes plaintiff from arguing to the contrary, and that they are entitled to summary judgment because probable cause defeats the false arrest and malicious prosecution claims. They further contend that due to the finding of probable cause, they did not violate plaintiff's civil rights and are therefore immune. In response, plaintiff argues that collateral estoppel is inapplicable because, due to the acquittal, he could not appeal

the pretrial ruling. Plaintiff also contends that collateral estoppel effect should not be given to the pretrial hearing because Dr. Valdes did not testify at that proceeding.

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We do not make credibility determinations or weigh evidence when ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Indeed, it is error to make credibility determinations at the summary-judgment stage. Morfin v. City of E. Chicago, 349 F.3d 989, 999 (7th Cir. 2003). Our only task is to "decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. We will grant a summary judgment motion when the evidence in the record shows that no dispute exists, or that the evidence brought by the nonmoving party is not sufficiently probative because it is only colorable as opposed to material. *Id.* at 249-50; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We review the evidence in the light most favorable to defendant, the nonmoving party. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003).

When an issue is actually litigated and resolved in a final decision by a court of competent jurisdiction, the doctrine of collateral estoppel, or issue preclusion, bars subsequent relitigation of that issue by a party involved in the prior proceeding. Adair v. Sherman, 230 F.3d 890, 893 (7th Cir. 2003). Collateral estoppel, and the related doctrine of *res judicata*, thus

overlap with Congress' intent that a federal court must accord "the same full faith and credit" to a state court decision as the state would give that decision. 28 U.S.C. § 1738. Collateral estoppel may preclude a litigant from bringing a section 1983 claim, based on an alleged Fourth Amendment violation in federal court, when that litigant lost on the same issues in state court. Allen v. McCurry, 449 U.S. 90, 104-05 (1980). Federal courts must apply state collateral estoppel law in order to determine whether the collateral estoppel effect of a state court decision bars a section 1983 claim. Schertz v. Waupaca Co., 875 F.2d 578, 581 (7th Cir. 1989).

Under Illinois law, collateral estoppel applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." Bajwa v. Metro. Life Ins. Co., 208 Ill.2d 414, 804 N.E.2d 519, 532, 281 Ill. Dec. 554 (Ill. 2004). Collateral estoppel is a doctrine of equity and it will be avoided when its application results in manifest injustice. Benton v. Smith, 157 Ill. App. 3d 847, 510 N.E.2d 952, 957-58, 109 Ill. Dec. 884 (Ill. App. 1st Dist. 1987). Further, if there are "peculiar circumstances" or if additional evidence is discovered, a court should not invoke collateral estoppel. People v. Armstrong, 56 Ill.2d 159, 306 N.E.2d 14, 15 (Ill. 1973).

Defendants argue that collateral estoppel applies here because all three requirements have been met: the pretrial ruling resolved the probable cause issue; that ruling was final; and plaintiff was a party to the prior proceeding. Plaintiff's primary argument is that collateral estoppel does not apply because he did not have an opportunity to appeal the pretrial ruling. That position is not without support. *See* People v. Mordican, 64 Ill.2d 257, 356 N.E.2d 71, 73

1 Ill. Dec. 71 (Ill. 1976); Ballweg v. Springfield, 114 Ill. 2d 107, 499 N.E.2d 1373, 1375, 102 Ill. Dec. 360 (Ill. 1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."); Restatement (Second) of Judgments § 28, *comment* a ("If review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of [issue preclusion] is inapplicable by its own terms."). But plaintiff's position is also not free from dispute.

In Thompson v. Mueller, 976 F. Supp. 762 (N.D. Ill. 1997), the district court held that collateral estoppel barred a plaintiff suing under section 1983 from arguing that officers who arrested him lacked probable cause. In that case the circuit court denied the plaintiff's motion to quash his arrest, but then acquitted him at trial, thus preventing the plaintiff from appealing the adverse pretrial ruling. The district court recognized Mordican and cases following, but disagreed with those cases based on Prymer v. Ogden, 29 F.3d 1208, 1212 (7th Cir. 1994), which observed in *dicta* that a final judgment "can be given collateral estoppel effect even while an appeal is pending." *Id.* at 1213 n.2. From that language the court in Thompson inferred that the right to appeal an issue is not dispositive; however, that inference ignores that the plaintiff in Prymer had the right to appeal, and had in fact exercised that right to appeal. Unlike Prymer, the procedural history of plaintiff's case reveals that the pretrial ruling was not final and plaintiff could not appeal that ruling due to his acquittal. The decision to acquit plaintiff – made by the very same court that issued the adverse pretrial ruling – leaves no doubt that the pretrial ruling was not a final order. Further, the court in Prymer distinguished Gray v. Lacke, 885 F.2d 399 (7th Cir. 1989), a decision in which appellate review was precluded, and in doing so the court observed that "nonfinal interlocutory orders do not have collateral estoppel effect." Prymer, 29 F.3d at 1213 n.2. By giving collateral

estoppel effect to a nonfinal interlocutory order that could not be appealed, the Thompson court far exceeded Prymer, which only observed that final judgments may be given preclusive effect even if an appeal is pending. Ultimately, the Prymer court's discussion on this matter is *dicta* because the court acknowledged that the issue was not central to its decision. Prymer, 29 F.3d at 1213 n.2. The Thompson court relied on this *dicta*, and not the views of the Illinois courts. *See* 28 U.S.C. § 1738. Consequently, it failed to give proper weight to the state courts' view that acquittal is a "peculiar circumstance" that militates against collateral estoppel. Mordican, 356 N.E.2d at 73-74; People v. Enis, 163 Ill.2d 367, 645 N.E.2d 856, 865, 206 Ill. Dec. 604 (Ill. 1994) ("Special circumstances have been found where the defendant was acquitted of certain charges, thereby precluding him from seeking appellate review of the trial court's rulings."). If Illinois courts would not give preclusive effect to the pretrial ruling, then neither should this court. We thus decline to follow Thompson's lead.

Even if the Thompson court did not, as we believe, misstep in its analysis, plaintiff's case is distinguishable on the grounds that the evidence presented at plaintiff's trial was different than that at the pretrial hearing. The Thompson court relied heavily on the fact that the "issue of probable cause was litigated thoroughly in the state court," (Thompson, 976 F. Supp. at 766), and there is no indication that the evidence presented in the two-day pretrial hearing was any different from that presented at trial. In contrast, the testimony of Dr. Valdes, which proved dispositive, was absent from the pretrial hearing, and it is difficult to depict that hearing as thoroughly litigated when the circuit court, in its own words, "did not have the benefit" of Dr. Valdes' testimony. The presentation of different evidence distinguishes plaintiff's case from the cases defendants cite in which the courts held collateral estoppel applicable. Further, to give the pretrial ruling preclusive effect when the court which

rendered that ruling subsequently disavowed it produces an unjust result that is contrary to the very basis of collateral estoppel. *See* Standefer v. United States, 447 U.S. 10, 23 n.18 (1980) ("The estoppel doctrine . . . is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct."). The pretrial ruling was incomplete rather than substantially correct, and no preclusive effect should be afforded to it.

There is still another reason why collateral estoppel does not prevent plaintiff from arguing that he was arrested without probable cause. Collateral estoppel may only apply when there is "a final judgment on the merits in the prior adjudication." DuPage Forklift Serv. v. Material Handling Servs., 195 Ill.2d 71, 744 N.E.2d 845, 849, 253 Ill. Dec. 112 (Ill. 2001). The pretrial ruling does not have the requisite finality for collateral estoppel purposes. A final judgment includes any "prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13. The trial court's ruling on probable cause was not sufficiently firm, as evidenced by the result at trial–plaintiff's acquittal. *See id.* at *comment* f ("Judgment ceases to be final if it is in fact set aside by the trial court."); Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir. 1979) ("To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment."). Further, due to Dr. Valdes' testimony, additional fact-finding was required after the pretrial ruling, which is contrary to the Supreme Court's articulation of collateral estoppel's purpose. *See* Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). ("[T]he whole purpose of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed."). Preclusive effect is extended to a decision that poses an "insuperable obstacle" to a party's success on the merits (Miller, 605 F.2d at 995), and plaintiff's acquittal

demonstrates that the pretrial ruling did not pose an insurmountable barrier to his success. In sum, it would be improper to give collateral estoppel effect to the pretrial ruling and bar plaintiff from relitigating the issue of probable cause.

To bring a malicious prosecution claim under Illinois law a plaintiff must establish (1) the commencement of an original criminal proceeding by defendant; (2) termination of the proceeding in plaintiff's favor; (3) absence of probable cause for such proceeding; (4) malice; and (5) damages. Fabiano v. City of Palos Hills, 336 Ill. App. 3d 635, 784 N.E.2d 258, 271 Ill. Dec. 40 (Ill. App. 1st Dist. 2002). Failure to establish any element dooms a malicious prosecution claim. *Id.* Defendants first contend that collateral estoppel precludes plaintiff from arguing that probable cause was absent, and that position is rejected for the reasons set forth above. In their second argument, defendants observe that plaintiff cannot raise a malicious prosecution claim under federal law. Newsome v. McCabe, 256 F.3d 747, 750 (7th Cir. 2001) ("the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."). But plaintiff also brings this action under Illinois law, and therefore states a claim even though he does not invoke supplemental jurisdiction by citing 28 U.S.C. § 1367.

In their final argument, defendants claim that they are entitled to summary judgment based on qualified immunity. Defendants rely on their collateral estoppel argument and contend that they did not deprive plaintiff of any constitutional rights because they had probable cause to arrest, according to the circuit court's pretrial ruling. But plaintiff is not precluded from arguing that defendants lacked probable cause. The record does not demonstrate that the officers acted reasonably when they arrested plaintiff on the grounds that he previously evaded them in a foot chase, when plaintiff protested that his severe disability

prevented him from running at all. Credibility issues and factual disputes remain outstanding, and summary judgment on qualified immunity grounds is improper.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied.

　　　　　　　　　　　　　　　　　　　　　　／s／ James B. Moran
　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

April 20, 2005.